# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

DOROTHY DELORIS MORRIS,

                    Plaintiff,

v.                                                    ACTION NO. 2:14cv179

CAROLYN W. COLVIN,
Commissioner of Social Security,

                    Defendant.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dorothy D. Morris brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to section 405(g) of the Social Security Act.   This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference, dated July 17, 2014.  ECF No. 10.  For the reasons set forth below, this Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED, and the decision of the Commissioner be VACATED and the case REMANDED for further administrative proceedings.

Defendant argues that because Plaintiff did not provide a statement of undisputed facts, her motion for summary judgment should be dismissed.  ECF No. 14 at 13.  The undersigned has considered the facts in the administrative record and accepted Defendant's statement of facts as undisputed.  However, because the ALJ did not apply the correct legal standard, the Court recommends the case be remanded.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively applied for DIB on March 14, 2011, alleging disability since January 1, 2011, caused by fractures in her lower limb and organic mental disorders.  R. 139-140, 247.[1]  Plaintiff's applications were denied initially and on reconsideration.  R. 139-40, 183-84.  Plaintiff requested a hearing by an Administrative Law Judge (ALJ), which occurred on July 23, 2013.  R. 32-73, 209.  Plaintiff was represented by counsel, and testified before the ALJ along with a vocational expert.  R. 32-73.

On July 26, 2013, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from the alleged onset date through the date last insured.  R. 25-26.  The Appeals Council denied Plaintiff's request for administrative review of the ALJ's decision.  R. 1-7.  Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 (2012).

Plaintiff timely filed this action for judicial review pursuant to 42 U.S.C. § 405(g).  On August 28, 2014, Plaintiff moved for summary judgment, asserting that the ALJ's determination that Ms. Morris' impairments did not meet or equal Listing 12.05(C) was not supported by substantial evidence, was inconsistent with the medical record, and was inadequately

---

[1] The citations in this Report and Recommendation are to the Administrative Record.

supported/explained.  ECF No. 12.  Defendant filed a cross-motion for summary judgment on September 29, 2014, contending the ALJ appropriately considered the evidence and the resulting opinion is supported by substantial evidence in the record.  ECF No. 13.  As neither counsel in this case has indicated special circumstances requiring oral argument, the case is deemed submitted for a decision based on the memoranda.

## II. <u>FACTUAL BACKGROUND</u>

Born in 1963, Plaintiff was forty-seven years old on her alleged onset date of January 1, 2011.  R. 247.  Plaintiff repeated the fourth grade and did not finish fifth grade.  R. 37. Plaintiff has past relevant work experience serving lunches in public schools, as a custodian, a pants presser, and a painter.  R. 40-44, 275.

**A.     Medical Background**

<u>1. Jeffrey Goodman, Ph.D</u>

On July 19, 2006, Jeffrey Goodman, Ph.D., performed a mental status examination for the Federal Disability Determination Service.  R. 406-13.  Plaintiff was driven to the examiner's office by her daughter, but came to the appointment unaccompanied, and was casually and age-appropriately dressed with good hygiene.  R. 406.  Plaintiff complained of problems with her back, foot, and knee, and reported that her past diagnoses with arthritis and back pain made it difficult for her to perform on the job.  R. 407.

A mental status examination showed that Plaintiff had "satisfactory auditory attention and comprehension and was able to understand inquiry and respond with intelligibility."  R. 409. Cognitively, she was "oriented in all spheres and her fund of information was actually quite adequate."  R. 409.  More specifically:

> Simple mental processing was adequate to recite the alphabet and count backward from 20 to 1, though she needed prompts to count by 4's and then did so. Immediate auditory attention was satisfactory for her to repeat words and sentences spoken to her for immediate recall and following a multi-step instruction. She needed some prompt[s] to recall [new] information after a delay. Moderate to higher reasoning and problem solving were mixed. While able to spell forward and backward, she had some difficulty with higher level arithmetic problem solving without the benefit of pencil and paper. While she was able to reason effectively on similarities, she offered some less viable responses to simple comprehension. . . . She was able to recall her Social Security number without problem.

R. 409. Dr. Goodman's diagnostic impressions were that psychological factors affected her physical condition, she had an unspecified cognitive disorder, dysthymic disorder, and a GAF of 65. R. 410. His assessment was that if she were able to better manage her physical issues, she had the capacity to complete simple and repetitive tasks, as well as more detailed assignments, as in the past. R. 411. He said:

> There is no real reason why she cannot attend work regularly nor consistently as long as the medical issues were better manage[d]. It is felt that [Plaintiff] probably would handle work assignment[s] better with supervision than without. She has the capacity to accept instruction. While she might not be particularly sociable, there is no reason why she could not interact with co-workers enough to complete task assignments.

R. 411.

### 2. Mark Long, Ed.D

On May 26, 2010, Mark Long, Ed.D., performed a psychological evaluation for the Norfolk Regional Office of the Disability Determination Service. R. 414-22. Plaintiff stated that she was applying for disability benefits due to problems with her hip, lower back, and foot. R. 414.

4

Plaintiff reported that she had received mental health treatment in either 2004 or 2005, and was psychiatrically hospitalized at Sentara Norfolk General Hospital in the Mental Health unit for a week or two when she attempted to commit suicide by overdosing and cutting her wrist.  R. 415.  She said she could drive, but tended not to, went grocery shopping, and had no friends.  R. 415.  She was the fifth of nine children, experienced problems at home, and did not progress past fifth grade.  She reported becoming pregnant at age 14 from rape, and that was one of the reasons she did not return to school.  R. 415.

Dr. Long reported in his mental status exam, that Plaintiff was casually and appropriately dressed, did not display any speech problems or articulation difficulties.  R. 416.  She reported being forgetful, but was alert and fully oriented.  R. 416.  She knew the name of the current President and other recent Presidents, but could not make simple change from a dollar.  R. 416.  Plaintiff was capable of spelling, both forward and backward, three-letter words, four-letter words, and some five-letter words.  R. 416.  After interference, she recalled two out of four objects, "suggesting some immediate auditory memory difficulties."  R. 416.  Plaintiff reported that she was going through challenges, but had difficulty explaining what that meant.  R. 416.  She conveyed feelings of worthlessness, uselessness, helplessness and unhappiness, but denied current suicidal ideation, intent, or plan.  R. 416.

Dr. Long tested Plaintiff according to the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and found:

> [s]he obtained a Verbal Comprehension Index score of 61 which fell at the 0.5 percentile, Perceptual Reasoning index was 67 which fell at the 1st percentile and a working memory index score of 66 which fell at the 1st percentile. A Processing Speed Index of 84 which fell at the 14th percentile. With the exception of the Processing Speed Index, which fell in a low-average range, her other scores fell in the upper limits of the extremely low functioning range.  Dorothy Obtained a

> Full-Scale IQ of 63 which fell in the 1st percentile. At the 95% Confidence Interval, this suggests an IQ range from 60-68. The Full-Scale IQ plus or minus 63 estimates [her] current intellectual potential to fall in the mental deficient functional range.

R. 417.  Dr. Long found that "the vast majority of her scores fell in a low and extremely low to borderline range when compared to same-age peers."  R. 418.  Diagnoses included major depressive disorder, recurrent, moderate to severe; nicotine dependence; provisional cognitive disorder; provisional borderline intellectual functioning; history of learning disorders; and a GAF of 55.  R. 418-19.

His summary was that Plaintiff appeared depressed, had been treated in the past for depression, and her "scores on the WAIS-IV [fell] within the mild mental retardation functioning range.  It is unclear whether or not this is a lifelong level or may be affected by her current depression or represents a decline in her level of functioning or may be affected by this current evaluation."  R. 418.  Dr. Long stated that Plaintiff seemed capable of managing her own money, but did not seem inclined to want to work; while psychologically stable, she could complete simple, moderate, and some complex tasks, and was marginally coping with minor stressors.  R. 419.

### 3. Gustavo Y. Vargas, M.D.

On October 4, 2010, Gustavo Y. Vargas, M.D., performed an examination that comported with Dr. Long's evaluation.  R. 425-31.  He made general observations that Plaintiff's verbal skills were slightly below average, but she was "oriented to time, place and person, with no distortion of the remote or recent memories."  R. 428.  Noting that Dr. Long's "clinical psychological evaluation reported a borderline IQ consistent with marginal retardation," Dr. Vargas assessed that Plaintiff "may have frequent limitations for working in certain altitudes

particularly ladders because of the history of attempted suicide" and that she would probably have difficulty getting along with coworkers unless she had psychological treatment with pharmacotherapy.  R. 431.

### 4. Sentara Norfolk General Hospital

On May 6, 2011, Plaintiff was involved in a car accident.  R. 434-72.  She was admitted to the Emergency Department of Sentara Norfolk General Hospital with a fractured left ankle. R. 434-41.  Theresa Haley, RN, noted that "following splint application there was no evidence of perfusion compromise."  Plaintiff was given Vicodin and Naprosyn, and released in a stable condition.  R. 443, 454.

Plaintiff also self-admitted herself to the emergency department on May 10, 2011, reporting increased pain/burning to her lower left heel.  R. 458-59.  Her splint was re-applied with ace wraps, and she was released with Percocet.  R. 460.

Plaintiff returned for an x-ray on July 19, 2011, and Thomas Arnston, CCD M.D., found "medial malleolar fracture with offset of distal fracture fragment without evidence of healing." R. 478.

### 5. Hillery Lake, M.D.

A state agency psychological consultant, Hillery Lake, M.D., reviewed the record on June 21, 2011 and completed a Psychiatric Review Technique form.  R. 110.  Dr. Lake considered the "A" criteria of the listings for organic mental disorders (12.02) and Affective Disorders (12.04) and found for both that "a medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above."  R. 110.  In looking at the "B" Criteria, Dr. Lake found that Plaintiff's restrictions of activities of daily living were moderate, her

7

difficulties in maintaining social functioning were mild, her difficulties in maintaining concentration, persistence, or pace were moderate, and she had no repeated episodes of decompensation, each of extended duration.  R. 110.  Dr. Lake also addressed the "C" criteria of the appropriate listings, and found that the evidence did not establish the presence of the paragraph "C" criteria.  R. 110.

### 6. Matthew Sleziak, D.O.

On July 23, 2011, Matthew Sleziak, D.O., performed a consultative physical examination for Virginia's Disability Determination Service.  R. 481-88.  Plaintiff reported recent problems with her left calf and ankle fracture from a motor vehicle in May 2011—she had chronic pain and swelling, wore a brace, and walked with crutches.  R. 481.  Plaintiff described her history of depression since 2005, that she had suicidal thoughts in the past and that this affects her mood and ability to be around others.  R. 482.

Neurologically, she was "alert and had good eye contact and fluent speech.  [Her] mood was appropriate and [she] had clear thought processes."  Plaintiff was oriented to time, place, person and situation, her memory was normal, and her concentration was good.  R. 484.  Plaintiff reported that she can write words, but could not read or write sentences, which limited her ability to obtain gainful employment.  R. 486.

Dr. Sleziak performed another consultative physical examination on May 5, 2012.  R. 524-31.  Plaintiff reported continued, though decreased, left calf and ankle pain, from her car accident.  R. 524.  Although she claimed anorexia, she had gained nine pounds since her last visit with Dr. Sleziak.  She reported no current suicidal thoughts, and Dr. Sleziak noted that her illiteracy caused communicative limitations.  R. 528-29.

### 7. David Deaver, Ph.D

David Deaver, Ph.D., a state agency psychological consultant, reviewed the record and completed a Psychiatric Review Technique form on May 24, 2012. R. 151-52, 172-73. Dr. Deaver considered the "A," "B," and "C" criteria of the listings for organic mental disorders (12.02) and Affective Disorders (12.04), and came to the same conclusion as Dr. Lake. He found that a medically determinable impairment was present, but did not satisfy the diagnostic criteria for the "A" listing. R. 151-52, 172-73. Dr. Deaver also looked at the "B" Criteria, and found Plaintiff's restrictions of activities of daily living to be moderate, her difficulties in maintaining social functioning to be mild, her difficulties in maintaining concentration, persistence, or pace to be moderate, and that she had no repeated episodes of decompensation, each of extended duration. R. 152, 173. Like Dr. Lake, Dr. Deaver found that the evidence did not establish the presence of the "C" criteria. R. 152, 173.

### 8. Michael E. Nahl, M.S.

On June 20, 2013, Michael E. Nahl, M.S., a licensed counselor, performed a psychological examination of Plaintiff after a referral from Plaintiff's primary care physician. R. 599-602. Plaintiff demonstrated considerable underlying anger, a moderate potential for acting out, and Mr. Nahl recorded that she had never attempted suicide.[2] R. 601. He summarized her three basic handicaps in life as sexual abuse, depression, and attention deficit hyperactivity disorder, all of which interfered with her academic and vocational development. R. 601.

---

[2] This clearly contradicts the statements Plaintiff made to Dr. Long about her hospitalization for attempted suicide (R. 415), but may be explained by lack of trust—this is mentioned in the same paragraph that Mr. Nahl noted she "can be critical and unpleasant in her verbal interactions with others, probably out of mistrust and expectation that others are planning to hurt her in some fashion." R. 601.

Specifically, he diagnosed Plaintiff with major, severe, recurring depression, attention deficit hyperactivity disorder, generalized anxiety disorder, and a personality disorder not otherwise specified. R. 601.

## B.  The Administrative Hearing

Plaintiff had a hearing before ALJ Alfred Costanzo on July 23, 2013. R. 32-73. Plaintiff was represented at that time, and testified that she lived with her husband and daughter. R 36-37. She reported that she had a savings and checking account, that she has written checks, but could not balance a checkbook. R. 39. She stated she could make change and went shopping, but sometimes used the riding cart. R. 39, 46. Plaintiff stated that she was driving when she was in her car accident, on May 5, 2011, and that she still had her license and a car, but did not like to drive on the interstate since her accident. R. 44-45, 52. Since the crash she used a cane periodically. R. 47. Regarding work experience, she stated that she worked at a school serving lunches, but did not cook the food. R 40-41. Before that she was a full-time school custodian. R. 42. In 2006 and 2007 she was a pants presser for Zoots. R. 43. Plaintiff also reported that she worked as a painter for Tidewater Staffing, which included some climbing and crawling. R. 43-44.

## C.  The ALJ's Decision

At step one of the sequential evaluation processes, the ALJ found that Morris had not engaged in substantial gainful activity since January 1, 2011, the onset date of her alleged disability. R. 18-19. Her work as a part-time server/food prep worker did not qualify. R. 19.

At step two, the ALJ noted that Plaintiff had the following severe impairments: borderline intellectual functioning, personality disorder, fracture of the left ankle, and compression fractures of the spine.  R. 19.

At step three, however, he found that her impairments did not alone, or in combination, meet or medically equal an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1—Plaintiff's  mental impairments did not meet the criteria of listings 12.02 or 12.05.  R. 19.

The ALJ noted that the "paragraph A" requirements of listing 12.05 are met when "there is mental incapacity evidence by dependence upon others for personal needs."  R. 20.  This was not the case because Plaintiff laundered her clothing and cooked food.  R. 20.

The ALJ noted that "paragraph B" of listing 12.05 requires a valid verbal, performance, or full scale IQ of 59 or less, which was not the case—Dr. Long measured her FSIQ at 63 in May 2010, and Dr. Vargas concurred with this result.  R. 20, 417, 426.

The ALJ stated that "paragraph C" of listing 12.05 requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation on function."  R. 20.  This was not met because while her FSIQ was measured at 63, "the record fails to establish that her physical and other mental impairments have caused her to become unproductive in her daily routine."  R. 20.

The ALJ noted that to satisfy "paragraph D" of 12.05 ("paragraph B" of 12.02), "the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; market difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration."  R. 19.

The ALJ found that Plaintiff had mild restrictions in activities of daily living; even though she reported having difficulty dressing herself, she can dress casually and neatly, drives, does laundry, and cooks.  R. 19.  The ALJ found Plaintiff to have moderate difficulties in social functioning, citing Mr. Nahl's report that she can be critical and unpleasant with others, but that she talks on the telephone and watches television with a friend.  R. 19.  The ALJ stated that Plaintiff had mild difficulties regarding concentration, persistence, or pace, noting that while Mr. Nahl reports her to be inattentive in many areas, she could pay bills, count change, handle a savings account, and use a checkbook.  R. 20.  Finally, the Plaintiff had experienced no episodes of decompensation of extended duration.  R. 20.

The ALJ then found that Plaintiff had the residual functioning capacity to perform light work that was limited to "simple, routine, repetitive tasks, and cannot perform work that requires reading or writing. She can have only occasional independent decision making and cannot complete tasks that require more than very basic arithmetic skills.  Furthermore, claimant can have only occasional interaction with the public and coworkers."  R. 21.  He noted that while Plaintiff has three prior ALJ denials, this case is different because she now alleges physical problems.  R. 21.  However, she still has some capacity for work, and the ALJ determined that while her "medically determinable impairments could reasonably be expected to cause the alleged symptoms. . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  R. 21.

The ALJ also did not accept Plaintiff's claims of Borderline Intellectual Functioning and Personality Disorder.  Plaintiff had a FSIQ of 63, but failed to demonstrate the appropriate negative effect of this on her everyday abilities.  R. 23.  Further, Mr. Nahl reported a Global

12

Assessment Functioning score ("GAF") of 55, which represents only moderate limitations.  R. 23.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work.  R. 24.   As the Vocational Expert testified, her past work as a pants presser and painter were medium unskilled positions, and the custodian job was a medium, semi-skilled position.  R. 24-25, 62-63.

At step five, the ALJ found that Plaintiff was not disabled because there were other jobs that exist in significant numbers in the national economy that she could perform.  R. 25-26.  As the Vocational Expert testified, Plaintiff could perform the representative occupations of agricultural produce sorter, folder machine operator, and apparel stock checker, of which there are 250,000, 50,000, and 198,000 in the national economy, respectively.  R. 26, 64.

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g) (2012); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Commissioner." *Hancock*, 667 F.3d at 472 (citations omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) ("Under the Social Security Act [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996))).

The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Hancock*, 667 F.3d at 476; *Williams v. Colvin*, No. 2:13CV703, 2014 WL 3828224, at *2 (E.D. Va. Aug. 4, 2014) ("The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g) if the ALJ does not provide substantial support for his decision, or if the ALJ incorrectly applies the law." (quotations omitted) (citing *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.1991) (unpublished table decision) and *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir.1996))).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *See Coffman v. Brown*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."); *Williams*, 2014 WL 3828224, at *2 ("[W]here the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision." (citing *Coffman*, 829 F.2d at 517)).

# IV. ANALYSIS

The Fourth Circuit has directly addressed the legal standard for 12.05(C):

Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A-D. At issue in this case was Requirement C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").

*Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). While lower courts have sometimes numbered the prongs differently,[3] "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990) (emphasis in original). "Plaintiff has the burden of proving that she meets or equals a listing." *Henry*, 2014 WL 856358, at *7 (E.D.Va. March 4, 2014) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5. (1987)).

## A.  A valid verbal, performance, or full scale IQ of 60 through 70

First, plaintiff must show "[a] valid verbal, performance, or full scale IQ of 60 through 70." *Hancock*, 667 F.3d at 473; *Henry*, 2014 WL 856358, at *8 ("Plaintiff must demonstrate (1) an IQ score between 60 and 70 . . . .").

---

[3] Plaintiff numbers the prongs like the court in *Henry v. Colvin*, No. 3:13CV357, 2014 WL 856358, at *8 (E.D. Va. Mar. 4, 2014) *aff'd*, 585 F. App'x 135 (4th Cir. 2014) ("Plaintiff must demonstrate (1) an IQ score between 60 and 70, (2) a physical or other mental impairment imposing an additional and significant work-related function, and (3) significantly subaverage general intellectual functioning with deficits in functioning before age 22."). To make sense of Plaintiff's arguments, as well as for following the current case in a logical fashion, Plaintiff's numbering, rather than *Hancock's*, will be used below.

15

As Plaintiff argues, the "record indisputably establishes IQ scores that satisfy the 'first prong' of the 12.05(C) test." ECF No. 12 at 8. Dr. Long tested Plaintiff with the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and found her full scale IQ to be 63. R. 47. The ALJ clearly accepted this assessment, citing Dr. Long's results that Plaintiff's "FSIQ was measured at 63 in May 2010." R. 20, 417. Therefore, according to both the ALJ's findings and the medical record, Plaintiff satisfies prong one.

## B.    A physical or other mental impairment imposing an additional and significant work-related limitation of function.

By labeling Plaintiff's impairments as "severe" in step two of his analysis, the ALJ conceded prong two as well. "Although, the regulations do not define what constitutes an additional impairment, courts have found that that an impairment meets the criteria if it qualifies as a severe impairment at step two of the sequential evaluation." *Sanders v. Colvin*, No. 3:13CV813, 2014 WL 3895675, at *10 (E.D. Va. Aug. 8, 2014); *see Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) ("The Secretary's finding that Luckey suffers from a severe combination of impairments also established the second prong of section 12.05(C)."); *see also Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003) ("Several courts of appeals have held that a finding of a severe impairment establishes the second prong of § 12.05C.").

In step two of his sequential analysis, the ALJ determined that Plaintiff had "the following severe impairments: borderline intellectual functioning, personality disorder, fracture of the left ankle, and compression fractures of spine." R. 19. According to *Luckey,* 890 F.2d at

669, the ALJ's determination in step two that Plaintiff's impairments were severe satisfies the second prong of 12.05(C).

## C.      Deficits in Adaptive Functioning Initially Manifested During the Developmental Period; Evidence Demonstrates or Supports Onset of the Impairment Before Age Twenty-two

The remaining issue is whether there is substantial evidence to support the ALJ's conclusion that Plaintiff did not meet the third prong of listing 12.05(C).  The ALJ's opinion does not, however, directly address prong three.  The sum total of the ALJ's determination of the issue is:

> [t]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  While Ms. Morris' FSIQ was measured at 63 in May 2010, the record fails to establish that her physical and mental impairments have caused her to become unproductive in her daily routine.

R. 20.  On its face, it appears that the ALJ used the wrong legal standard, for there is no mention of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22."  *Hancock*, 667 F.3d at 473.  After accepting the FSIQ of 63, the ALJ does not distinguish between prongs two and three of 12.05(C), and simply found they were not met because "the record fails to establish that her physical and mental impairments have caused her to become unproductive in her daily routine."  R. 20.

Because the ALJ's finding of severity in step two established prong two, the ALJ may have meant that Plaintiff's productivity in her daily routine showed a lack of deficits in adaptive functioning onset before age twenty-two.  The ALJ's brief statements about productivity in daily

living are not, however, adequate to make such a showing.  "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *United States v. Salad*, 959 F. Supp. 2d 865, 877 (E.D. Va. 2013) (quoting DSM–IV–TR at 42 (American Psychiatric Association 2000)).  Deficits in adaptive functioning "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia,* 536 U.S. 304, 308 n. 3 (2002)).  These deficits "limit functioning in one or more activities of daily living, such as communication, social participation and independent living." *Henry*, 2014 WL 856358, at *9 (quoting DSM–V at 33 (American Psychiatric Association 2013)).

While Plaintiff's daily routine could feasibly be used as a proxy for her activities of daily living, the ALJ's finding that she was not unproductive in those activities is not sufficient for a ruling under 12.05(C)—the ALJ must at least address the appropriate elements of the test, and apply them to the evidence.  *Williams v. Colvin*, No. 2:13CV703, 2014 WL 3828224, at *13 (E.D. Va. Aug. 4, 2014) ("[T]he ALJ failed to list the elements of Listing 12.05, thus necessitating reversal and remand without further analysis of the ALJ's decision.").

The fact that the amount of deficit required may be unclear (ECF No. 12 at 11) does not excuse the ALJ from making a finding on adaptive functioning and alleged onset date.  *See e.g., Hancock*, 667 F.3d at 475 ("The ALJ found no deficits in adaptive functioning generally and also found that no deficiency manifested itself before the age of 22."); *Russell v. Colvin*, No.

3:13CV524-HEH, 2014 WL 4258260, at *12 (E.D. Va. Aug. 27, 2014) ("The ALJ questioned the validity of Plaintiff's IQ score of 59, but nevertheless found that Plaintiff did not meet the listing requirements, because he did not have deficits in adaptive functioning."); *Henry*, 2014 WL 856358, at *8 ("Specifically, the ALJ found that Plaintiff's verbal IQ score registered at 69 . . . and that Plaintiff had severe physical impairments . . . . However, Plaintiff did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting before age 22.").

By failing to address Plaintiff's deficits in adaptive functioning, the ALJ did not apply the correct legal standard from 12.05(C), and this case should be remanded. *See Coffman v. Brown*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."); *Williams*, 2014 WL 3828224, at *2 ("[W]here the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision." (citing *Coffman*, 829 F.2d at 517)).

## V.  RECOMMENDATION

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED, and the decision of the Commissioner be VACATED and the case REMANDED for further administrative proceedings.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. §  636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules.  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.).

/s/
_____
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
March 31, 2015